JOHN S. McGREW vs. BARNES and McCANDLESS.

EXCEPTIONS TO DECISION OF JUDD, C.J., REFUSING NEW TRIAL.

APRIL TERM, 1887.

JUDD, C.J., McCULLY, PRESTON and BICKERTON, JJ. FORNANDER, J., absent.

The defendants agreed with the plaintiff to bore an artesian well for the plaintiff for the sum of $1650, and were paid that amount. The well was left in an unfinished condition and leaked. The plaintiff employed other persons to complete the well and stop the leak, and such persons agreed that if they could not stop the leak, they were not to receive anything, but if they stopped the leak they were to be paid $1000. The jury found a verdict for the plaintiff for $400.

Held, on motion for new trial by plaintiff, affirming decision of Judd, C.J., that plaintiff could only recover what the work was reasonably worth, and that the evidence supported the verdict.

OPINION OF THE COURT, BY BICKERTON, J.

This is an action of assumpsit tried at the January Term, 1887, Chief Justice Judd presiding; the jury in the case rendering their verdict for plaintiff in the sum of Four Hundred ($400) Dollars. The plaintiff thereupon excepted to the verdict as being contrary to the law and the evidence. A motion for a new trial was filed and heard. The grounds on which said motion was made are:

1. Errors in law occurring during the trial of said action, to which plaintiff excepted.

2. That the verdict of the jury is against the law and the evidence.

The Court denied said motion, to which ruling of the Court the plaintiff duly excepted, and prays that the same may be certified to the Supreme Court in Banco. And the matter now comes here on a bill of exceptions allowed by the Chief Justice.

The plaintiff's complaint sets forth a written contract, where-

by the defendants jointly agree, for the consideration of sixteen hundred and fifty dollars, to sink and bore an artesian well, upon land of plaintiff at Ewa, Island of Oahu, and to finish it in a good workmanlike manner; that the well was not finished in workmanlike manner, and that defendants left it in an unfinished condition and leaking; that by false representations they induced plaintiff to pay them the said sixteen hundred and fifty dollars; that after payment of said money plaintiff ascertained that said well was unfinished and leaking badly; that plaintiff at divers times and places informed the defendants that said well was not completed, and requested them to complete the same, but they refused to do or perform anything further. That in consequence of such refusal, the plaintiff has been compelled to lay out large sums of money to complete the said well and stop said leak, and has been put to other expenses and damage in large sums of money, to wit: in the aggregate sum of twelve hundred and seventy dollars, according to the bill of particulars annexed:

| | |
|---|---:|
| Rope for measuring well, W. A. Peirce & Co.......... $ | 2 00 |
| Hack hire, Pantheon Stables.......... | 11 00 |
| Consultation with J. B. Smith, as expert.......... | 15 00 |
| Consultation with John Anderson, as expert.......... | 10 00 |
| Consultation with Lewis Newby, as expert.......... | 12 00 |
| Consultation with M. D. Monsarrat, as expert.......... | 10 00 |
| Repairing well, McCandless Bros.......... | 1000 00 |
| Work on the well in repairing the same, Jacintho R. do Monte | 10 00 |
| Counsel fees in bringing present action, P. Neumann.......... | 100 00 |
| S. B. Dole.......... | 100 00 |

$1270 00

Some of these items were struck out by the Court, including last two items, counsels' fees.

The defendants, during the trial, offered in evidence the record of a prior suit between the parties herein in which plaintiff submitted to a non-suit. Plaintiff objected to the introduction of said record as incompetent and inadmissible; plaintiff's objection being overruled, plaintiff duly excepted. This

appears from the record to be the only exception saved during the trial, but seems to have been abandoned, as it is not raised or argued here. Therefore, the only question left for us is to consider if there is evidence introduced at trial to support the verdict of the jury. It became a question of *quantum meruit* for the jury; the breach of the contract being well established. The plaintiff after several visits of inspection, with certain experts, finally engaged the McCandless Bros. to complete the well and stop the leak. The agreement was, "that if they did not stop the leak, they would not get a dollar, but if they succeeded in stopping the leak, they would charge what it was reasonably worth." The jury had to find from the evidence what it was reasonably worth. If the agreement had been no pay if they did not stop the leak, and one thousand dollars if they succeeded, the case might have assumed another shape. Plaintiff would not be warranted in paying any fancy or unreasonable price. He was paying out money on account of defendants, expecting to recover it from them, and he should be as careful as if he had been paying out money on his own account. There would not seem to be much risk to McCandless Bros., for they had (before agreeing to take the work) tried with a "spring tool," and found the pipe was not down on the bed-rock, and all the witnesses agree that the leak was from that cause, and it proved to be so. L. L. McCandless says in his evidence, "We fixed it in August by driving the pipe eighteen feet; it stopped the leak entirely." He also says, "We drove after the second day, I think it was three days driving the pipe." J. S. McCandless says in his evidence, "The leak was on account of pipe not being on bed-rock. I knew it, because on shutting the well the leak boiled up more, and we made a bargain to repair it;" he also speaks of testing well with "spring tool," and also that after driving pipe fifteen feet they left it, and the leak was stopped; he also states that it might have taken seven days to take the rig down and back again, for which a charge of $90 was made. The rates per diem for well-boring rigs, testified to by witnesses, vary from $20 to $50.

A. Marques testifies to having his well repaired and repiped by one Festler, for $600, Festler furnishing the pipe, the well being 300 feet deep.

We think there is abundant and ample evidence to support the verdict of the jury, and we cannot interfere with it. The verdict is not palpably against the evidence. Exceptions overruled with costs.

*S. B. Dole,* for plaintiff.

*C. Brown* and *Kinney & Peterson,* for defendants.